UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JAMAL LAMONT ELLISON,

    Defendant.

Case No. 20-cr-20455

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER [#14]

### I. INTRODUCTION

On August 28, 2020, Defendant Jamal Lamont Ellison ("Defendant") was charged in a criminal complaint for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e).  ECF No. 1, PageID.1.  Defendant was subsequently charged in an indictment with this count.  *See* ECF No. 9.  On September 15, 2020, a detention hearing was held via video conference before Magistrate Judge Anthony P. Patti.  ECF No. 7.  Magistrate Judge Patti concluded that the Government established with clear and convincing evidence that there is no condition or combination of conditions of release that will reasonably assure the safety of other persons and the community, as well as a preponderance of evidence that no condition or combination of conditions will reasonably assure Defendant's

1

appearance.  ECF No. 8, PageID.15.  Defendant was therefore detained pending trial. *Id.* at PageID.16.

Presently before the Court is Defendant's Motion for Revocation of Detention Order, filed on October 23, 2020.  ECF No. 14.  The Government filed a Response on November 6, 2020.  ECF No. 18.  A hearing on this matter was held on December 3, 2020.  For the reasons that follow, the Court will **DENY** Defendant's Motion Revocation of Detention Order [#14].

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Offense

On July 30, 2020, Detroit Police Department ("DPD") officers were on foot patrol in downtown Detroit when they observed Defendant wearing a fitted t-shirt and jeans with a firearm on the right side of his waistband.  ECF No. 1, PageID.3. When the DPD officers asked Defendant if he had a valid concealed pistol license, Defendant purportedly replied "yes" and then immediately tried to flee.  *Id.*  The DPD officers chased Defendant on foot through a hotel's parking lot, where they allegedly observed Defendant tossing a firearm into an alley.  ECF No. 18, PageID.73.  Defendant was arrested shortly after exiting the hotel's parking lot.  *Id.* The DPD officers then purportedly discovered a Smith & Wesson .40 caliber handgun, which was loaded with fifteen live rounds of ammunition, from the alley. *Id.*  On August 6, 2020, Special Agent Josh Mclean advised that the recovered

firearm is a firearm as defined under 18 U.S.C. § 921 and was manufactured outside of the state of Michigan.  ECF No. 1, PageID.4.  Special Agent Josh Mclean dd not physically examine the recovered firearm.

Federal agents subsequently obtained a criminal complaint and arrest warrant for Defendant.  ECF Nos. 1, 2.  Defendant appeared before Magistrate Judge Patti for his initial appearance on September 14, 2020 and was ordered detained pending trial following his detention hearing the following day.  *See* ECF Nos. 5, 6, 7.  On September 23, 2020, a grand jury found probable cause to indict Defendant on one count of being a felon in possession of a firearm.  ECF No. 9.

### B.  Defendant's Background

Defendant is thirty-two years old and a lifelong resident of the Eastern District of Michigan.  Defendant has always resided with his grandmother.  Prior to his arrest, Defendant resided with Ms. Ellison at a rental home in Detroit for approximately two years.  Defendant remains in frequent contact with his immediate family, including three sisters and two brothers.  Defendant also has a good relationship with the mothers of his two minor sons, ages three and one.  His two sons live with their mothers in Detroit and Manistique, Michigan.  Defendant reported, and Ms. Ellison confirmed, that he maintains contact and provides support for his two sons and that he has a strong family support system.

Defendant explains that he has worked in landscaping with a relative in Detroit, Michigan.  However, according to Ms. Ellison and Probation Agent Brown, Defendant is unemployed.  Defendant also reports an employment history with Staff Works in Fraser, Michigan since 2011.  Pretrial Services was unable to verify this information at the time of its report.

Defendant claims that he is a diabetic and that he takes insulin daily for treatment.  He does not report any history of mental health illness.  Ms. Ellison confirmed this report for Pretrial Services.  Defendant asserts that he first began experimenting with, and occasionally using, marijuana at age sixteen.  He does not report any other illegal drug or alcohol use.   Agent Brown advised that while Defendant was on probation, Defendant's drug test results have been negative since 2018.

Defendant has a history of several arrests, criminal convictions, and multiple probation violations, beginning at the age of sixteen.  Several of his convictions include those for controlled substances offenses and fleeing from, resisting, or assaulting law enforcement.  Defendant was on probation when he was arrested for the present charge.

### C.  Detention Hearing

Prior to his detention hearing, Pretrial Services recommended that Defendant be detained pending trial.  On September 15, 2020, Defendant appeared before

Magistrate Judge Patti.  ECF No. 7.  Magistrate Judge Patti found that detention is warranted.  ECF No. 8.

At the detention hearing, Magistrate Judge Patti emphasized the circumstances surrounding the serious nature of the instant offense, including the discarding of a loaded gun in the middle of the city, as well as Defendant's criminal history and numerous probation violations.  In his order of detention, Magistrate Judge Patti highlighted several findings in support of detention, including: (1) Defendant's six prior drug convictions; (2) Defendant's eighteen probation violations, several of which remain pending; (3) Defendant's three prior offenses involving fleeing from, resisting or assaulting law enforcement; (4) the fact that Defendant was found with a 40 caliber firearm loaded with numerous live rounds, which he threw on the ground while being chased by the DPD officers; (5) Defendant's prior failure to report use of opiates, marijuana, and cocaine, as known to MDOC; and (6) Defendant's falsely claimed employment to Pretrial Services. ECF No. 8, PageID.16.

While Magistrate Judge Patti acknowledged Defendant's positive characteristics, including his strong familial ties to the area, he found that the Government had established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.  *Id.* at PageID.15.   He also determined that the Government had established by a

preponderance of evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance. *Id.* He thus ordered Defendant to be detained pending trial. *Id.* at PageID.16.

### III. LEGAL STANDARD

Title 18 U.S.C. § 3145(b) allows the district judge to review an order detaining a defendant. It is a *de novo* hearing. *United States v. Jones*, 804 F. Supp. 1081 (S.D. Ind. 1992); *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Generally, in order for a defendant to be detained, the government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Pre-trial detention shall be ordered only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

In determining whether there are conditions which will reasonably assure the appearance of the person and the safety of the community, the district court must make findings based on the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history

and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release.  18 U.S.C. § 3142(g).

## IV. ANALYSIS

### A. The Parties' Arguments

In his present Motion, Defendant moves this Court, pursuant to 18 U.S.C. § 3145(b), to grant his Motion for Revocation of Detention.  ECF No. 14.  He argues that he poses neither a danger to the community nor a risk of flight.  *Id.* at PageID.45. He emphasizes that conditions can be imposed to assure the Court of his appearance at future court proceedings and the safety of the community, including a tether with home confinement.  *Id.*  Moreover, Defendant emphasizes that he is a diabetic and thus he is at higher risk for contracting the COVID-19 virus.  *Id.* at PageID.51.  In support of his Motion, Defendant attaches letters of support for his requested relief, including a letter from his younger brother.  *See* ECF No. 14-1.

The Government argues that Defendant is both a danger to the community and a flight risk.  ECF No. 18, PageID.72.  In its Response brief, the Government asserts that the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of Defendant's continued detention pending trial.  *Id.* at PageID.76.  Moreover, the Government argues that Defendant's request for a tether and home confinement, and that his grandmother serve as his third-party custodian, are insufficient in light of his past conduct and criminal history while living with his grandmother.  *Id.* at PageID.80.

The Government also disputes Defendant's argument that he is at a higher risk of serious illness from COVID-19 because of his diabetes, emphasizing that he is receiving appropriate medical care. *Id.* at PageID.81. The Government also attached a copy of Defendant's medical records under seal. ECF No. 19-1.

**B. The Bail Reform Act**

Magistrate Judge Patti determined at the detention hearing that the factors under 18 U.S.C. § 3142(g) support detention. ECF No. 8. In weighing all four factors under § 3142(g), this Court also finds that the evidence supports Defendant's continued detention on both dangerousness and non-appearance grounds.

**1. Nature and Characteristics of the Charged Offense**

The first factor the Court must consider is the nature and circumstances of the offenses charged against Defendant. The Government argues that the nature and circumstances of the offense charged in this case are serious, as they involve an attempt to flee and a firearm loaded with numerous live rounds of ammunition, which Defendant threw in an alley in downtown Detroit. ECF No. 18, PageID.76. Further, the Government emphasizes that Defendant's conduct is "even more serious given his history of drug dealing, as well as the fact that he was on probation for drug dealing with several pending probation violation hearings at the time of his arrest." *Id.*

The full extent of the nature and circumstances of the charged offenses is serious.  First, Congress has specified that an offense which involves a firearm, as is the case here, is a categorically serious offense.  *See* 18 U.S.C. § 3142(g)(1).  Further, the Court emphasizes that the specific circumstances surround the instant offense involve Defendant allegedly falsely telling DPD officers that he had a valid concealed pistol license and attempting to flee before discarding a loaded firearm.  Second, the Court takes seriously Defendant's prior serious drug convictions, including delivery of controlled substances offenses such as cocaine and heroin.  The Court finds that this criminal history demonstrates Defendant's dangerousness.

As to Defendant's risk of flight, the Court takes notice of Defendant's three prior offenses involving fleeing from, resisting or assaulting law enforcement.  Moreover, the Court denotes that Defendant was on probation at the time of his arrest.  These circumstances are of concern to the Court as it evaluates the instant charge, which, as discussed *supra*, involve an attempt to flee DPD officers.  Accordingly, this first factor thus weighs in favor of Defendant's detention.

### 2.  The Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Defendant.  "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt."  *United States v. Stone*, 608

F.3d 939, 948 (6th Cir. 2010); *see also United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

The Government argues that the weight of the evidence of Defendant's dangerousness and risk of non-appearance is strong.  ECF No. 18, PageID.77–78. For this second factor, the Government emphasizes Defendant's lengthy criminal history, including multiple drug offenses; numerous probation violations; and history of providing an incorrect address to his MDOC probation officer.  *Id.*

The Court agrees and finds that the weight of the evidence of Defendant's dangerousness and risk of flight is strong in light of the alleged offense.  As to Defendant's dangerousness, as explained above, the DPD officers observed Defendant attempting to flee and discarding a loaded firearm with fifteen live rounds of ammunition.  As to Defendant's risk of non-appearance, the Court cannot ignore Defendant's eighteen past probation violations.  Even recognizing that Defendant has not missed any prior court appearances, the Court ultimately finds that Defendant's repeated behavior of violating supervised released conditions is of great concern for Defendant's future conduct to follow directives from Pretrial Services.

In his Motion, Defendant emphasizes his extensive and strong familial ties to the Detroit area.  ECF No. 14, PageID.50.  He suggests that he could be subjected to a tether with home confinement while residing with his grandmother to accurately monitor his movement.  *Id.*  While the Court finds that such conditions may mitigate

a concern for Defendant's dangerousness, such conditions do not completely ease the Court's concern of future court appearances. Indeed, the Court questions how effective a tether can be in ensuring Defendant comply with directives from Pretrial Services when he has previously committed multiple crimes while living with his grandmother. *See* ECF No. 18, PageID.80. In sum, the second factor also weighs in favor of Defendant's detention.

### 3. History and Characteristics of the Defendant

The third factor requires that the Court review the history and characteristics of the Defendant, which are statutorily separated into two categories. The first category examines the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The second category asks "whether, at the time of the current offense or arrest, [Defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Here, Defendant is a lifelong resident of the community with familial ties to the Detroit area. ECF No. 14, PageID.50. Specifically, his two minor children, siblings, and grandmother live in the area. The Court positively takes notice of

Defendant's strong commitment to remaining in contact with and providing support to his two minor children, who presently reside with their respective mothers. The Court takes issue, however, with Defendant's uncertain employment history. Indeed, while Defendant claims that he works in landscaping with a relative, Agent Brown was unable to verify this information. Moreover, the Court is concerned with Defendant's history of providing an incorrect address to a MDOC probation officer.

Defendant does not report any history of mental health illness. He does report taking insulin once a day for his diabetes, which the Government does not dispute. Defendant claims that he has smoked marijuana on occasion since he was sixteen years old. According to the Government, Defendant has previously failed to report past substance abuse to MDOC, including "abusing marijuana on a daily rather than occasional basis, opiates on a daily basis (reported to MDOC in 2016), and cocaine (reported to MDOC in 2017)." ECF No. 18, PageID.79.

The Government directs the Court to Defendant's lengthy criminal history, which includes ten felony convictions, six of which for controlled substances offenses. *Id.* at PageID.78. Defendant concedes that he has a criminal history which includes narcotics convictions; however, he emphasizes that he has never been charged with any serious assaultive crimes prior to the instant charge. ECF No. 14, PageID.51. He also highlights that he has never been charged with possession of a

firearm.  *Id.*  Further, Defendant asserts that the present case does not involve any allegation that he was involved in any other alleged criminal activity.  *Id.*

While the Court takes seriously Defendant's assertion that he was not involved in any other alleged criminal activity at the time of his present arrest, the Court ulitmatley concludes that Defendant's criminal history, a history which includes prior offenses involving fleeing from, resisting or assaulting law enforcement since 2005, weighs in favor of detention.  Moreover, the Court once more emphasizes that Defendant is alleged to have committed the instant offense while on probation.  In total, Defendant has eighteen prior probation violations.

Based on the foregoing considerations, the Court agrees that this third factor also weighs in favor of detention.

### 4. The Nature and Seriousness of the Danger Posed by Defendant's Release

The fourth and final factor demands that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release."  18 U.S.C. § 3142(g)(4).  The Court must "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole.  *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988).  Here, for all the reasons set forth above, the Court finds that Defendant would pose a danger to the community and a risk of non-appearance if released pending trial.  Furthermore, the Court weighs strongly the recommendation

from Pretrial Services, which concluded that there was no condition or combination of conditions that could reasonably assure Defendant's appearance and the safety of the community. This final factor thus also weighs in favor of detention.

Moreover, the Court agrees with the Government's concern for Defendant's proposed conditions. *See* ECF No. 18, PageID.80. As discussed *supra*, the Court questions the adequacy of Defendant's proposed release plan, specifically one to his grandmother's home in Detroit, Michigan, where Defendant has previously committed multiple crimes. *See id.*

In sum, all four factors under § 3142(g) weigh in favor of detention. Accordingly, the Court concludes that no conditions or combination of conditions will reasonably assure the safety of the community and Defendant's future appearances as required if Defendant were released pending trial.

## C. COVID-19

Finally, the Court takes notice of Defendant's health concerns in light of the COVID-19 pandemic. To reiterate, Defendant has diabetes and takes insulin to treat his condition. While Defendant did not provide any medical documentation to explain the seriousness of his condition or whether the Saginaw County Jail is providing treatment or medication to address his condition, the Government did. ECF No. 18-1. The records confirm, and the Government does not contest, that

Defendant has diabetes.  *See generally id.*  The Government asserts in its Response that Defendant is presently receiving appropriate medical care for his diabetes.

The Court denotes that Defendant's diabetes was not addressed at his detention hearing before Magistrate Judge Patti.  Nevertheless, the Court recognizes the gravity of the coronavirus pandemic and the serious risks posed to incarcerated individuals, especially those who are more vulnerable because of their underlying health conditions.  Indeed, Defendant's diabetes places him in the Center for Disease Control and Prevention's ("CDC") higher risk category for COVID-19 complications.  *People With Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Nov. 2, 2020).  While such risks may present a compelling reason for bond, the Court "must balance [Defendant's] risk of infection while confined against the right of the community to be free from danger if [he] is released and fails to abide by conditions set out by the Court."  *United States v. Wood*, No. 19-20216-6, 2020 U.S. Dist. LEXIS 79472, at *12–13 (E.D. Mich. May 6, 2020).  Upon review of Defendant's record, and in light of the analysis set forth in the preceding section, that balance does not warrant revocation of the detention order.

At the time of the parties' briefing, there were no confirmed cases at the Saginaw County Jail.  The Government informed the Court at the hearing that there have since been twenty-two positive cases.  However, the Government emphasized that none of these cases are within Defendant's pod, where Defendant is housed with other federal detainees.  Moreover, the Court takes notice of the specific measures which the administrators and staff at Saginaw County Jail have established to minimize transmission of the novel coronavirus disease, including a pre-screening process for new incarcerated individuals; more frequent cleaning; a daily screening process for correctional officers and staff; and on-site rapid COVID-19 testing. Additionally, upon review of Defendant's medical records, the Court takes notice that he has access to appropriate medical care for his diabetes.

The Court reiterates that all four factors under § 3142(g) weigh in favor of detention.  In sum, while the Court is concerned with the special risks that COVID-19 poses to incarcerated individuals like Defendant, the Court concludes that the evidence establishes by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of other persons and the community should Defendant be released on bond pending trial.

## V. CONCLUSION

Accordingly, for the reasons articulated above, **IT IS ORDERED** that Defendant's Motion for Revocation of Detention Order [#14] is **DENIED**.

**IT IS SO ORDERED.**

Dated:      December 3, 2020

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 3, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager